Filed 1/21/14  P. v. Rodriguez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXIS TRINIDAD RODRIGUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B243722<br>(Super. Ct. Nos. 2009022351, 2012003514)<br>(Ventura County) |

Alexis Trinidad Rodriguez appeals a judgment of conviction of sale or transportation of methamphetamine, and possession of methamphetamine for sale (Ventura County Superior Court Case No. 2012003514). (Health & Saf. Code, §§ 11379, subd. (a), 11378.) We affirm.

Rodriguez also appeals an order revoking probation and imposing sentence following his conviction by guilty plea to second degree robbery, and misdemeanor disobeying a court order regarding a gang injunction, including his admission that he committed the robbery to benefit a criminal street gang (Ventura County Case No. 2009022351). (Pen. Code, §§ 211, 166, subd. (a)(4), 186.22, subd. (b)(1)(C).)[1] We affirm.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

*FACTUAL AND PROCEDURAL HISTORY*

*Case No. 2009022351*

In January 2009, Rodriguez and a companion entered a Walmart store in Oxnard, took some items, and left the store without paying for them. Security personnel unsuccessfully attempted to detain Rodriguez. An Oxnard police gang investigator testified at trial that Rodriguez was a self-admitted member of the Colonia Chiques criminal street gang. Rodriguez had a street moniker and many Chiques gang tattoos. The gang investigator also testified that Rodriguez had been served with a court-ordered gang injunction.

*Case No. 2012003514*

On January 28, 2012, Rodriguez met two women at an Oxnard convenience store to conduct an arranged methamphetamine transaction. Rodriguez entered their vehicle and began to exchange methamphetamine for cash when sheriff's deputies interrupted the drug transaction and arrested him. The deputies found nine small baggies of methamphetamine weighing 2.37 grams on the floor of the backseat of the vehicle. A cellular telephone found in Rodriguez's clothing contained text messages regarding other drug transactions.

*Conviction and Sentencing*

In Case No. 2012003514, the jury convicted Rodriguez of the sale or transportation of methamphetamine (count 2), and possession of methamphetamine for sale (count 3). (Health & Saf. Code, §§ 11379, subd. (a), 11378.) It also found that he suffered a prior serious felony and strike conviction. (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The trial court sentenced Rodriguez to a two-year prison term for count 2, to be served consecutively to the term imposed in Case No. 2009022351, and it stayed a four-year prison term for count 3 pursuant to section 654. The court also imposed a $480 restitution fine, a $480 parole revocation restitution fine (stayed), a $50 laboratory fee, and a $150 drug program fee, and awarded Rodriguez 413 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45; Health & Saf. Code, §§ 11372.5, subd. (a),

2

11372.7, subd. (a).) On the motion of the prosecutor, the court dismissed a remaining count as well as sentencing enhancements.

In Case No. 2009022351, on September 23, 2009, Rodriguez pleaded guilty to second-degree robbery, and misdemeanor disobeying a court-ordered gang injunction, and admitted committing the robbery to benefit a criminal street gang. (§§ 211, 166, subd. (a)(4), 186.22, subd. (b)(1)(C).) The trial court then granted Rodriguez 36 months of formal probation, with terms and conditions. On August 21, 2012, the court revoked the probation grant following Rodriguez's admission that he had violated probation terms. The court then sentenced Rodriguez to a three-year term for the robbery conviction, and a consecutive 10-year term for the criminal street gang allegation. (§§ 211, 186.22, subd. (b)(1)(C).) The court also imposed a $136.26 restitution fine, and a $136.26 parole revocation restitution fine (stayed), and awarded Rodriguez 550 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45.) Rodriguez's sentence for the two criminal cases amounts to 15 years.

Rodriguez appeals and contends that the trial court erred by: 1) denying his challenges for cause to prospective jurors David M., Agnes W., and Allan B.; and 2) denying his challenge for cause for Juror No. 6, who remained on the jury. Rodriguez claims the errors are prejudicial and deny his constitutional rights to an impartial jury and to due process of law pursuant to the federal and California Constitutions. (U.S. Const., 6th & 14th Amends; Cal. Const., art. 1, § 16.)

*DISCUSSION*

*Summary of Relevant Juror Voir Dire*

*Prospective Juror David M.*

Prospective juror David M. stated that he provided security at the Church of Latter Day Saints, and that previously he was a deputy sheriff in Utah and in Los Angeles County. In Utah, he worked in a gang task unit, and in Los Angeles County, he performed patrol in Compton. Two of David M.'s family members work in Ventura County law enforcement.

3

David M. admitted that he "[p]robably" had different beliefs regarding gangs than a person not in law enforcement, and that he thought he was "pretty fair" but his beliefs were "probably a problem." Regarding the requirement to follow jury instructions, David M. stated: "I'm very, very strict at abiding with the law in my own personal conduct, in my own personal beliefs, so, yes, I would expect [to abide by the instructions] myself." He later added that law enforcement was a "pretty distant part" of his life and that he was "a big believer in the system [and] the law."

Rodriguez challenged David M. for cause. The trial court denied the challenge after instructing David M. that all witnesses "start off on the same footing," whether the witness is "a judge, or a police officer, or a doctor, or a clergy, or anyone." David M. stated that he didn't "have any problem with all of that." Later, Rodriguez exercised a peremptory challenge against David M.

*Prospective Juror Agnes W.*

Agnes W., a third-grade teacher, stated that she had served as a juror in two prior criminal prosecutions and described the jury system as "a good process" that she explains to her students.

Agnes W. stated that she was "not comfortable" with issues regarding illegal drugs, particularly if children were involved. She added: "I teach kids to follow the rules. And, you know, listen to both sides of the story and I'll do the best I can."

Agnes W. also stated that she would not allow her negative beliefs regarding drugs and street gangs to influence her deliberations. She stated: "I'll try my best to be fair. I'll listen to all the evidence. I'll follow the rules. I'll do my best." Agnes W. responded, "No, I don't think so," to the prosecutor's question whether she would convict Rodriguez regardless of the evidence or the lack of proof beyond a reasonable doubt.

Later, Agnes W. responded to the trial court's questions regarding her ability to follow the law despite the nature of the charges: "I think I can. I'll . . . do my best. I'll do the best that I can. I mean. I don't know. That's just a tough one for me."

Rodriguez later challenged Agnes W. for cause, arguing in part that her facial expression and "body posture," i.e., "a crouched or a balled position" in the chair

4

suggested that she was not likely to be fair and impartial. The trial court denied Rodriguez's motion, stating that Agnes W.'s answers, "body language," and demeanor did not indicate that she could not perform her duties faithfully. Rodriguez then exercised a peremptory challenge against Agnes W.

*Prospective Juror Allan B.*

Allan B. stated that he had served as a juror in two prior criminal prosecutions. He admitted that he preferred not to be a juror due to the nature of the charges – drugs and street gangs – but would "be compelled to be objective." Allan B. added: "I'm old enough to have been through some things that tell me I can do that, but I don't like it."

Allan B. also questioned the purpose of incarceration and described "the system" as "a failure." He stated that he preferred rehabilitation to incarceration, but promised to return a verdict without regard to sentence. Allan B. also stated that he would follow the law and keep an open mind rather than rely upon his personal feelings.

Later, in response to the trial court's questions, Allan B. stated that based upon his prior jury service, he thought he could presume Rodriguez innocent. He also stated, however, that: "I can't sit here and say that I don't already have an opinion."

The trial court then granted Rodriguez's challenge for cause regarding Allan B. Later, the court decided that Rodriguez's challenge was not timely and it denied the challenge for cause. The court granted Rodriguez an additional peremptory challenge, however, to challenge Allan B.

*Juror No. 6*

Juror No. 6, a deputy probation officer, had previously served as a juror in a criminal prosecution. She stated that it was possible that she had written a probation report regarding Rodriguez if he had a criminal history in Ventura County. She explained that her "core values are fairness and integrity and respect for the system and rendering a decision based on the facts of the case."

In the court chambers, Juror No. 6 informed the trial judge and the attorneys that she had been sexually molested as a child, but stated that experience would not

5

influence her as juror. She also expressed concern that jury service would impact her work load as a probation officer.

Rodriguez challenged Juror No. 6 for cause, arguing that her work assignments may prove a distraction and she appeared emotional regarding the sexual molestation. The trial judge denied the challenge, stating: "[Juror No. 6] gave me every impression that she could faithfully execute her duties as a juror. I didn't read anything in her demeanor or body language that indicated a problem with doing that. Her substantive answers indicated no bias, no grounds for granting cause. I think she can faithfully execute her duties as a juror in this case . . . ." Rodriguez then requested an additional peremptory challenge, but the court denied the request.

Later, during trial, Juror No. 6 informed the trial court that although she did not recognize Rodriguez by name or appearance, she may have encountered him at juvenile hall when she performed "juvenile intake." Rodriguez once again asked that the trial court excuse Juror No. 6.

The following day, Rodriguez informed the trial court that he remembered Juror No. 6 from juvenile hall. The court inquired if either party had additional questions for her, and if they would stipulate to her excusal. The prosecutor declined to so stipulate. The court heard brief argument from counsel and then summoned Juror No. 6 to the courtroom. The trial judge asked if she could be "a fair and impartial juror in this case." Juror No. 6 responded, "I do." The court once again denied Rodriguez's request to remove Juror No. 6.

*I.*

Rodriguez argues that prospective juror David M. held an implied bias based upon his law enforcement background. (Code Civ. Proc., §§ 225, subd. (b)(1), 229, subd. (f) [implied bias is "[t]he existence of a state of mind in the juror evincing enmity against, or bias towards, either party"].) Rodriguez points to David M.'s statements that he held beliefs about criminal street gangs based upon his law enforcement experience, that the beliefs "probably [were] a problem," and that he initially stated that he would give more weight to a police officer's testimony than that of a civilian witness.

6

Generally, the qualifications of jurors challenged for cause are matters "within the wide discretion of the trial court, seldom disturbed on appeal." (*People v. Jones* (2003) 29 Cal.4th 1229, 1246.) "'On review, if the juror's statements are equivocal or conflicting, the trial court's determination of the juror's state of mind is binding'" if supported by sufficient evidence. (*Id.* at p. 1247.) On review, the appellate court should defer to the trial court because it "had the opportunity to observe and listen to the juror." (*People v. Holt* (1997) 15 Cal.4th 619, 651.) A trial judge observes and speaks with a prospective juror, hearing his responses, including the tone of voice, level of confidence, and demeanor – information that does not appear in the appellate record. (*People v. Solomon* (2010) 49 Cal.4th 792, 830.)

The trial court did not abuse its discretion by denying the challenge for cause against David M. David M. affirmed that he was "very, very strict at abiding with the law," and would "abide" by the jury instructions. Moreover, he stated that law enforcement was a "pretty distant" part of his life and that now he was employed in finance. David M.'s initial statement regarding the credibility of a police officer witness appears in the context of an expert witness – lay witness discussion, i.e., whether a roadway was gravel or a wall was brick. David M. later said that he did not "have any problem" with evaluating law enforcement and civilian witnesses alike, and that he "was reading a little bit into" the earlier questions regarding police officer witness credibility. Sufficient evidence supports the court's exercise of discretion in determining that David M. was an impartial juror. (*People v. Jones*, *supra*, 29 Cal.4th 1229, 1246-1247 [standard of review].)

Rodriguez asserts that prospective juror Agnes W. had an actual and an implied bias against him based upon her attitudes regarding illegal drugs. He points out that she admitted a "little bit" of doubt regarding her impartiality and that she would "try" to be impartial, and would do her best. *(People v. Bittaker* (1989) 48 Cal.3d 1046, 1089-1090 [trial judge erred in denying challenge for cause where prospective juror responded with "unqualified" yes whether she *would be unable to be impartial* and later stated that she "could try" but it "would be difficult"].) Rodriguez also challenges the trial judge's

7

statement to Agnes W. that he wanted "to make sure that [she] could be fair to both sides." He argues that the comment suggested an affirmative answer and had "a chilling effect on the jury panel."

The trial court expressly considered Agnes W.'s responses, "body language," and demeanor, and denied Rodriguez's challenge for cause. Agnes W.'s stated that she taught her students to follow the rules and to listen to each side. She repeatedly affirmed that she would do her best and that she would not convict Rodriguez regardless of the evidence or lack of proof beyond a reasonable doubt. Agnes W. did not state that she was incapable of impartiality in a drug possession/sales prosecution. Moreover, counsel informed her that the matter did not involve drug sales to children. The court did not abuse its discretion in its resolution of any equivocal responses given by Agnes W. (*People v. Jones*, *supra*, 29 Cal.4th 1229, 1246-1247 [standard of review].)

We also disagree with Rodriguez's interpretation of the trial judge's statement to Agnes W., "I want to make sure that you could be fair." In context, the judge was resolving the issue of Agnes W.'s impartiality in order to determine her qualification, not suggesting an answer to her or other prospective jurors.

Rodriguez argues that the trial court erred by ruling that his challenge to prospective juror Allan B. was untimely. He asserts that Allan B. was actually and impliedly biased, in part because he stated that he did not "feel objective, but . . . [was] compelled to be," and could not say that he didn't "already have an opinion."

The trial court properly exercised its discretion by not excusing Allan B. for cause and permitting Rodriguez an additional peremptory challenge (11 peremptory challenges for Rodriguez, 10 for the prosecutor).[2] It is true that Allan B.'s responses were conflicting; the court reasonably could have determined, however, that Allan B. was qualified as an impartial juror. For example, Allan B. repeatedly stated that he was "compelled" to be objective and referred to his prior jury experiences. There is no error.

---

[2] The trial judge stated: "So for the purposes of any reviewing court, I treat it as the Court having granted the defense an additional peremptory, because I do not believe that challenge for cause was timely."

8

*II.*

Rodriguez contends that the trial court erred by not disqualifying Juror No. 6 for cause based upon her employment as a county probation officer. He also asserts that the court erred by not permitting additional voir dire of her. Rodriguez argues that Juror No. 6 was uncomfortable during voir dire, emotional in chambers when she discussed her sexual abuse, and concerned about managing her workstream as a probation officer. He adds that she may have seen him when he was confined at juvenile hall.

The trial court did not abuse its discretion regarding voir dire of Juror No. 6 and denial of Rodriguez's challenge for cause.

Juror No. 6 repeatedly insisted that she would be fair and impartial and that jury service "trumps everything." She also stated that she did not recognize or remember Rodriquez from any juvenile hall confinement, and that she would be impartial even if she did remember him. Her requests for chambers voir dire reflect her respect for the criminal justice system to privately discuss her confidential work assignments, childhood sexual abuse, and the possibility that Rodriguez saw her at juvenile hall.

Moreover, the trial court permitted the parties to inquire further of Juror No. 6 and offered to field questions from counsel.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

9

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____


Lisa M. J. Spillman, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.